IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDREA REX, ) | CIVIL ACTION NO: 04-10568 WGY |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| LSG SKY CHEFS, INC. ) | |
| ) | |
| Defendant ) | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT III, BREACH OF WARRANTY

Plaintiff Andrea Rex hereby moves for summary judgment on Count III of her

Amended Complaint alleging Breach of Warranty. On an American Airlines flight from

Dallas/Ft. Worth to Boston, Ms. Rex suffered a cracked tooth when she bit into a foreign

object in a sandwich made and distributed by the defendant LSG Sky Chefs, Inc.

(hereafter "LSG"), an airline caterer.

The plaintiff seeks application of Texas law to this Count, pursuant to which a

distributor of unfit food is liable based upon implied warranty regardless of negligence.

**I.    Statement of Material Facts as to Which There is no Genuine Issue to be Tried.**

1. On November 9, 2002 Andrea Rex was a passenger on an American Airlines

flight from Dallas/Ft.Worth to Boston. Plaintiff's Affidavit, ¶ 2. The Plaintiff's

Affidavit is provided as Attachment A hereto.

2. LSG is in the business of airline catering and has a principal place of business

in Irving, Texas. Affidavit of Plaintiff's Counsel, ¶ 2. The Affidavit of Plaintiff's

Counsel is provided at Attachment B hereto; Defendant's Answer to Amended Complaint, ¶ 5.

3. LSG provided and sold to American Airlines meals for the flight taken by Ms. Rex, including "Bistro Bags" containing sandwiches. Defendant's Answers to Interrogatories, no. 1, 3. The Defendant's Answers to Interrogatories are provided at Attachment C hereto.

4. LSG prepared and wrapped the sandwich in the Bistro Bag that was served to Ms. Rex. Defendant's Answers to Interrogatories, no. 1, 3.

5. After unwrapping the sandwich, Ms. Rex did not leave her seat prior to eating the sandwich. After she unwrapped the sandwich there was no opportunity for a foreign object to get into the sandwich. Plaintiff's Affidavit, ¶ 4.

6. When Ms. Rex bit into the sandwich she felt and heard a loud crunch, realized that she had a hard, foreign object in her mouth, spat it out and saved it, and felt with her tongue that she had suffered a cracked tooth. Plaintiff's Affidavit, ¶ 5.

7. The foreign object is jagged, triangular, approximately 5 mm. x 3 mm. and appears to be ceramic or hard plastic. Affidavit of Plaintiff's Counsel, ¶ 6.

8. LSG provided and sold meals to American Airlines for distribution to passengers on Ms. Rex's flight pursuant to a Catering Services Agreement dated April 27, 1992. The Agreement provides for LSG to provide food catering for flights originating from approximately thirty airports, including both domestic and international flights. The Agreement contains an indemnification clause in which LSG agrees to indemnify American Airlines for any claims arising from LSG's catering. The Agreement provides that it will be governed by "the laws of the State of Texas without

regard to choice of law principles." Catering Services Agreement, p. 48, 75, A-1 – A-2.

The Catering Services Agreement is provided at Attachment D hereto.

9.  American Airlines' principal place of business is in Fort Worth, Texas.
Affidavit of Plaintiff's Counsel, ¶ 3.

## II.    LSG's Liability for Preparation and Distribution of Unfit Food Should be Determined by the Application of Texas Law.

In this diversity action, the court must apply the choice of law rules of

Massachusetts as the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487,

61 S.Ct. 1020, 85 L.Ed. 1477 (1941).  Massachusetts has rejected a rigid choice of law

approach "in favor of the more flexible, multiple-factor, 'interest analysis' or 'most

significant relationship' analysis exemplified by the Restatement (Second) of Conflict of

Laws (1971)." Bi-Rite Enterprises, Inc. v. Bruce Minor Co., 757 F.2d 440, 442 (1st Cir.

1985); Daynard v. Ness, Motley et al., 188 F.Supp.2d 115, 118 (D. Mass. 2002).

Massachusetts has adopted "a functional choice of law approach that responds to the

interests of the parties, the States involved, and the interstate system as a whole." Id.

(citing Bushkin Assoc., Inc. v. Raytheon Co., 393 Mass. 622, 631, 473 N.E.2d 662

(1985)).

Section 145(2) of the Restatement (Second) identifies contacts to be considered in

a product liability claim to include:  the site of injury, the place where the conduct

occurred, the parties' domiciles and the place where the parties' relationship is centered.

See, In re Air Crash Disaster at Washington, D.C. on January 13, 1982, 559 F.Supp. 333,

343 (D.D.C. 1983).  These contacts should be evaluated according to their relative

importance with respect to the particular issue. Id.

3

In this case, both with regard to the number of contacts and their importance, the State of Texas predominates.

LSG's principal place of business is in Irving, Texas.

The flight took off from Dallas/Ft. Worth.

American Airlines' principal place of business is in Fort Worth, Texas.

The Catering Services Agreement between LSG and American Airlines that governed their business dealings, covering approximately thirty airports and both domestic and international flights, provides that the "Agreement will be governed by, and construed in accordance with, the laws of the state of Texas without regard to choice of law principles." See, Catering Services Agreement, 4/27/92, p. 75, A-1 – A-2. (See Attachment D hereto).

All conduct relating to LSG's catering of food for the flight occurred in Texas in the vicinity of the Dallas/Ft. Worth Airport as detailed in LSG's Answers to Plaintiff's First Set of Interrogatories (See Attachment C hereto).

The location of the accident is uncertain and entirely arbitrary. The plaintiff bit into the sandwich somewhere in the skies between Texas and Massachusetts.

It would make little sense to apply the law of Massachusetts, the place where the plaintiff resides, to govern the preparation and distribution of food that occurred in Texas. Passengers on the plane undoubtedly were from many different states. It would be impractical to evaluate the conduct of an airplane caterer by the laws of each State that a passenger happened to be from. In a case where many passengers were injured by tainted food, this could lead to the same conduct being evaluated in dozens of different ways depending upon the fortuity of the passengers' residency.

4

It makes far more sense to apply one set of rules -- the law of the State where the food was prepared and put on the airplane. LSG cannot claim to be unfairly surprised by the application of Texas law, having chosen to locate its business in Texas and having entered a Catering Services Agreement that is governed by Texas law.

Texas has a longstanding policy of holding a seller of unfit food liable based upon implied warranty regardless of negligence. The injured party need only establish that the adulterating or dangerous substance that caused the injury was in the food distributed by the seller. See, Jacob E. Decker & Sons, Inc., v. Capps et al., 139 Tex. 609, 164 S.W.2d 826 (1942); Athens Canning Company v. M.L. Ballard, 365 S.W.2d 369 (Tex. Ct. App. 1963).

Texas is one of the leading states in agricultural and meat production and has a strong interest in regulating its food industry.[1] By imposing a common law form of strict liability, the Texas courts have determined that public policy requires compensation to those injured by unfit food without requiring proof of negligence. It would be nonsensical for a court in Massachusetts to find that a Massachusetts citizen should receive less protection under the law than a Texas resident would receive when injured by a food prepared and distributed in Texas. Massachusetts has no interest in making it more difficult for one of its own citizens to obtain compensation for injuries caused by conduct that occurred in Texas by a company headquartered in Texas that are compensable under Texas law absent proof of negligence.

---

[1] The 2002 Census of Agriculture issued by the United States Department of Agriculture ranks Texas 2nd amongst the states in total value of agricultural products sold and 1st in the value of livestock, poultry and their products. The Census is available on-line at www.nass.usda.gov/census/census02/profiles/tx/cp99048.pdf. A copy of the Texas State Profile contained in the Census is provided at Attachment E hereto.

### III.    LSG is Liable for Injuries Caused by a Foreign Object in Food it Prepared and Distributed.

In its Answers to Interrogatories, LSG describes its role in producing and distributing the sandwiches served to Ms. Rex and her fellow passengers. LSG purchased food from Michael Lewis, including the sandwich ingredients. LSG assembled the sandwiches, wrapped them in paper, put the sandwiches in Bistro Bags, and then transported the food to the flight. LSG's Answers to Interrogatories, no. 1, 4. Provided as Attachment C hereto.

Ms. Rex states that between the time she unwrapped her sandwich and began to eat, she did not leave her seat and that there was no opportunity for the foreign object to get into the sandwich after she unwrapped it. There is no evidence suggesting otherwise. When Ms. Rex started to eat the sandwich she bit into a hard, foreign object and cracked a tooth. Ms. Rex's affidavit is sufficient to establish that the foreign object was in the sandwich when the sandwich was distributed by LSG to American Airlines. This is sufficient to establish liability for breach of implied warranty.

Under Texas law a processor or distributor of contaminated food is liable for the injuries sustained as a result of eating such food. See, Jacob E. Decker & Sons, Inc. v Capps, 139 Tex. 609, 164 S.W.2d 828 (1942); Athens Canning Company v. M.L. Ballard, 365 S.W.2d 369 (1963); Caddo Grocery & Ice v. Carpenter, 285 S.W.2d 470 (1955); Campbell Soup Company, Inc. v. Ryan, 328 S.W.2d 821 (1959); Amarillo Coca-Cola Bottling Co., Inc. v. Loudder, 207 S.W.2d 632 (1947). Liability need not be based on negligence, but rather on an implied warranty imposed as a matter of public policy to protect human health and life. The Decker Court stated that when food products sold for human consumption are unfit for that purpose there is "an utter failure of the purpose for

6

which the food is sold, and the consequences of eating unsound food are so disastrous to human health and life, that the law imposes a warranty of purity in favor of the ultimate consumer as a matter of public policy." Decker, 139 Tex. at 612. To establish liability based upon this implied warranty, the injured party need only establish that the foreign substance that caused the injury was in the food packed by the manufacturer. Athens Canning Company, 365 S.W.2d at 372.

Decker held that a manufacturer is liable directly to the consumer without privity of contract. Id. at 617. The Court noted that if the main purpose of the rule is to protect the health of the public, it would be arbitrary and unreasonable to require a direct contractual relation. Id. at 620.

In Decker, the manufacturer of contaminated sausage was held liable under the theory of implied warranty to the consumers despite a jury finding that the manufacturer was not negligent and did not sell the sausage to the consumer, rather it sold to a retail merchant who then sold to a consumer. Id. at 617. See also, Caddo Grocery & Ice v. Carpenter, 285 S.W.2d 470 (1955) (manufacturer of sandwiches sold to retailer held liable under implied warranty to consumers who became ill after consuming sandwiches bought from retailer); Campbell Soup Company & Ice v. Carpenter, 285 S.W.2d 470 (1955) (plaintiff recovers damages against the manufacturer of TV-Dinner which contained a metal washer despite no knowledge of where the TV-Dinner was purchased); Denny's Inc. v. Rainbo Baking Company, Inc., 776 S.W.2d 246 (1989) (manufacturer of bun is liable to the consumer if wire was in bun when it left its control even though bun was used in a hamburger sold at a Denny's Restaurant).

Amarillo Coca-Cola Bottling Co., Inc. v. Loudder followed the holding in Decker, stating that "it is now settled policy of the law of this state that, to protect the health and lives of the public, a manufacturer or vendor of foods and beverages is liable to consumers thereof for injuries caused by contaminated or poisonous substances in such food or beverages at the time they are manufactured and sold, even though the manufacturer be not guilty of negligence in manufacturing and processing them." Amarillo Coca-Cola Bottling Co., 207 S.W.2d at 633. The court held that the bottling company was liable for injuries sustained as a result of drinking Coca-Cola which was contaminated by the decomposed body of a mouse. Id. at 632-633. The court held that it was enough that the defendant manufactured the soda and that there was no evidence that the mouse got into the bottle or was put there by someone else after it left the manufacturer. Id. at 633.

Similarly, in Athens Canning Company v. M.L. Ballard, the manufacturer of a can of peas was held liable for injuries suffered when the plaintiff bit into a burr contained in the can. The plaintiff was able to establish through circumstantial evidence that the burr probably was in the can at the time of manufacturing. Athens Canning Company, 365 S.W.2d at 371. The peas were taken from a sealed can and put in a pan which was free from any foreign substance. Seasoning and shortening were added to the pan, but the court found it is unlikely that the burr could have been in one of them, and concluded that it was probable that the burr came from peas because peas are often found growing in the field with burrs. Id. See also, Coca Cola Bottling Co. v. Enas, 164 S.W.2d 855 (1942) (where damages sustained as a result of drinking a bottle of coke

8

which contained a decomposed body of a spider, plaintiff does not need direct evidence

as to how spider got into the bottle.)

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment on

Count III, Breach of Warranty should be allowed.

Dated: 1/27/05

Andrea Rex
By her Attorney,

Keith Halpern
BBO# 545282
4 Longfellow Place
37th Floor
Boston, MA 02114
(617) 722-9952

## Certificate of Service

I hereby certify that I have this date served the above by causing a true copy
thereof to be mailed by first class postage prepaid mail to all counsel of record.

Dated: 1/27/05

Keith Halpern

9