IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB 15  P 2: 39

U.S. DISTRICT COURT
DISTRICT OF MASS.

ANDREA REX,

          Plaintiff

v.

LSG SKY CHEFS, INC.

          Defendant

CIVIL ACTION NO: 04-10568 WGY

## DEFENDANT LSG SKY CHEFS, INC.'S
## OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendant, LSG Sky Chefs, Inc. (hereinafter "LSG") submits this opposition and memorandum of law in support of their opposition to plaintiff, Andrea Rex's (hereinafter "Rex") motion for summary judgment. As set forth below, based on the undisputed material facts, the plaintiff is not entitled to judgment as a matter of law.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

1.      Agreed.

2.      Agreed.

3.      Agreed.

4.      Denied. The bistro bag is actually in a cooler. The consumer picks it out of the cooler on her way to boarding the plane. As such, the meal is not actually served to her. (See Exhibit A - Defendant's answers to interrogatories and Exhibit B – cover page and cold

food production section of Hazard Analysis Critical Control Point [hereinafter "HACCP"] Manual)

5.    Denied. There is no evidence to support plaintiff's conclusion that the alleged foreign object could not have entered the meal after plaintiff unwrapped the sandwich.

6.    Denied. There is no evidence to support plaintiff's conclusion that the object is a "foreign" object as described by plaintiff.

7.    Denied. There is no evidence to support plaintiff's conclusion that the object is a "foreign" object as described by plaintiff. As the object has not been tested, its composition is unknown. It cannot be an uncontested fact for purposes of summary judgment that an alleged foreign object "appears to be" one material or another.

8.    Agreed. The defendant agrees that this fact is not in dispute. However, as detailed below, the defendant argues that this fact, while agreed, is wholly irrelevant to the choice of law issue.

9.    Agreed. The defendant agrees that this fact is not in dispute. However, as detailed below, the defendant argues that this fact, while agreed, is irrelevant to the choice of law issue.

## ADDITIONAL FACTS IN DISPUTE

1.    The defendant disputes that the object is a foreign object as its makeup is unknown at this time.

2.    The alleged foreign object was not in the sandwich at the time it left defendant's control

3.    All components of the sandwich, including the meat, cheese and bread, are received pre-sliced by LSG. The gloved LSG employee takes the bread, opens it, places the slices of meat on, places the slice of cheese on and then puts the top on the bread. She then wraps

the sandwich in paper and places a sticker on it to keep it closed. (See Exhibit A - Defendant's answers to interrogatories and Exhibit B – HACCP Manual)

4.    No utensils or products matching the description of the alleged foreign object are used by defendant in the sandwich making process. (See Exhibit A - Defendant's answers to interrogatories and Exhibit B – HACCP Manual)

## ARGUMENT

## I.    REX IS NOT ENTITLED TO SUMMARY JUDGEMENT AS THERE ARE MATERIAL FACTS IN DISPUTE.

Summary judgment should be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.    Cassesso v. Commissioner of Correction; 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass. R. Civ. P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc. 404 Mass. 14, 16-17 (1989). Summary judgment is not appropriate when the party opposing the motion has alleged facts relating to the transaction on which suit has been brought which raised issues entitling him to trial. Wheatley v. American Tel. & Tel. Co., 418 Mass. 394 (1994). A defendant opposing a plaintiff's summary judgment motion is only required to contradict the plaintiff's affidavit, not to establish the truth of defendant's position. Kesler v. Pritchard, 362 Mass. 132 (1972).

In the present matter there are material facts in dispute. Specifically, plaintiff has failed to identify what the alleged foreign object is. It is plaintiff's burden, first and foremost, to establish that the object is foreign and not reasonably to be expected by the consumer rendering the meal dangerous. As plaintiff has not had the object tested, she has never identified what it is. As such, she has not satisfied this burden. Her summary judgment motion highlights this shortcoming.

Plaintiff refers to the object as "appear[ing] to be ceramic or hard plastic." (Plaintiff's undisputed facts at ¶ 6)

Furthermore, it is contested, and more importantly for the purposes of this motion unclear, when the alleged foreign object got into the sandwich. Plaintiff only claims that it couldn't have gotten in to the sandwich after she unwrapped it. There is no factual support for this conclusory statement. While this statement is purely speculation, it also does not foreclose the possibility that the object entered the sandwich after it left defendant's possession, but before plaintiff unwrapped it.

## II.    MASSACHUSETTS SUBTANTIVE LAW APPLIES

Massachusetts substantive law applies to this matter. A federal court sitting in diversity is required to follow the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Electric Manufacturing, 313 U.S. 487 (1941). Disposition of the substantive choice of law issues in tort turns on "the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented." Graham v. Malone Freight Lines, 948 F. Supp. 1124, 1131 (1996) citing Pevoski v. Pevoski, 371 Mass. 358 (1976).

> "The factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

Cosme v. Whitin Mach. Works, 417 Mass. 643 (1994)

An analysis of relevant factors supports defendant's position that Massachusetts substantive law applies. On the surface this matter appears evenly split between Massachusetts

and Texas. Plaintiff is a Massachusetts resident and the flight was bound for Massachusetts. On the flip side, the defendant is a Texas corporation and the flight was taking off from Texas.

The relevant policies of the interested states and the relative interests of those states in the determination of the particular issue swing the balance. If Massachusetts' law applies, the Court would employ the "reasonable expectations test." The reasonable expectations test is the appropriate one to apply in determining liability for breach of warranty of merchantability under M.G.L. c. 106, § 2-314(2)(c), by reason of a bone or other substance in food that caused harm to a consumer. Phillips v. Town of West Springfield, 405 Mass. 411 (1989). The pertinent reasonable expectations are those of the ordinary purchaser of the type who purchases the product in question. Id. The purpose of Massachusetts' law concerning foreign objects in food is to protect the consumer. The fact that the policy underlying the caselaw is compensatory and not punitive is an important consideration in determining which state has the more significant connection with the issue. In re air Crash Disaster at Boston Massachusetts on July 31, 1973, 399 F.Supp. 1106, 1112 (1975) In this matter the consumer is a Massachusetts resident. It follows then that the law of the state where the consumer resides should be applied to her claims that she is entitled to compensation.

Plaintiff's reliance on the contract between LSG and American Airlines ("American") for support that Texas law applies is misguided. The choice of law provision in the contract applies only to that contract and has no bearing on the choice of law analysis in this matter. Simply put, it is irrelevant. If plaintiff's argument was accepted and followed to its logical conclusion, then every case involving LSG would require the Court to apply Texas law. This is absurd. By illustration, under plaintiff's theory Texas law would apply on a flight from Logan to Nantucket if LSG were a defendant.

It is defendant's position that if the Court denies the first part of plaintiff's summary judgment motion then the remainder of that motion is moot.

## III.    EVEN IF TEXAS LAW APPLIED, PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT

Plaintiff falls far below the summary judgment hurdle. A motion for summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Community National Bank v. Dawes, 369 Mass. 550, 553 (1976), citing Mass. R. Civ. P. 56(e), 365 Mass. 824 (1974); see also Deas v. Dempsey, 403 Mass. 468 (1988). Simply put, in the present matter there are material issues of fact in dispute.

Texas Courts, like Massachusetts Courts, have applied a "reasonable expectations" test. Jim Dandy Fast Foods, Inc. v. Carpenter, 535 S.W.2d 786 (TX. 1976). An article is unreasonably dangerous when the article sold is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Id. at 790 quoting Restatement of Torts, 2d, Sec. 402. In Jim Dandy, a case involving a chicken bone in a piece of fried chicken breast, the Court stated "the consumer would expect to find bones in and about such a piece of chicken." Id. at 790.

Therefore, for the purposes of her summary judgment motion, plaintiff must establish as a matter of law that the meal is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Id. at 790 quoting Restatement of Torts, 2d, Sec. 402.

34340.1

Plaintiff has failed to meet this burden. She has not proven as a matter of law that the object rendered the meal dangerous to the ordinary consumer. To fulfill this burden, plaintiff would first have to identify what the allegedly foreign object is. As the object has not been tested, its composition is unknown. Plaintiff's summary judgment motion highlights this shortcoming. She refers to it as "appear[ing] to be ceramic or hard plastic." (Plaintiff's undisputed facts at ¶ 6)

The question of whether the object rendered the sandwich dangerous is a question for the jury. In Jim Dandy, the Court determined that "reasonable persons might also differ as to whether the piece of chicken in which this particular bone was found was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics" and that it was a question for the jury. Id. at 790. As such, the question of whether the object that was in the plaintiff's sandwich rendered it dangerous is not an appropriate issue for summary judgment.

Under Texas law, the rule of strict liability applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. Jim Dandy Fast Foods, Inc. v. Carpenter, 535 S.W.2d 786 (TX. 1976). A nonnegligent manufacturer who processes and sells contaminated food to a retailer for resale for human consumption is liable to the consumer for injuries sustained by him as a result of eating the contaminated food, under an implied warranty imposed by operation of law as a matter of "public policy". Jacob E. Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828 (1942). However, ordinarily, in absence of representation or contract to contrary, a manufacturer or vendor should not be held liable for defects caused by contamination or deterioration which occur after the commodity has left his hands. Id. at 619

Plaintiff relies heavily on the <u>Decker</u> case as support for her argument that she is entitled to summary judgment. Plaintiff, however, has missed one vital distinction between <u>Decker</u> and the present matter. In <u>Decker</u> the jury found that <u>at the time</u> the sausage in question was processed and manufactured it was contaminated and poisonous to such an extent as to be unfit for human consumption. <u>Jacob E. Decker & Sons v. Capps</u>, at 611. In the present matter, however, plaintiff has not submitted any evidence that the allegedly foreign object was in the sandwich when it left the defendant's control. The only "evidence" plaintiff submits in her motion for summary judgment is that the plaintiff did not get up after unwrapping her sandwich. It does not necessarily follow that the alleged foreign object did not enter her sandwich between the time it left LSG's control and when Rex ate it. It could have gotten in after she unwrapped it without her knowing it. Or it could have gotten into the sandwich when other passengers were taking sandwiches out of the cooler. As such, defendant is not entitled to judgment as a matter of law, as the record does not establish that a jury must find that the product was defective, nor that a jury must find that the object was in the sandwich when it left defendant's control.

It is defendant's position that the alleged foreign object did not enter the sandwich during the sandwich making process and was, in fact, not in the sandwich when it left their control. (See Exhibit A - Defendant's answers to interrogatories and Exhibit B – HACCP Manual) The defendant has described the sandwich making process in great detail to prove that the alleged foreign object could not have entered the meal during the sandwich making process. (See Exhibit A - Defendant's answers to interrogatories) There are no utensils or other objects that are hard plastic or ceramic, as the plaintiff claims the foreign object is. (See Exhibit A - Defendant's answers to interrogatories and Exhibit B – HACCP Manual)

## CONCLUSION

The defendants, LSG Sky Chefs, Inc., respectfully request that this honorable Court deny plaintiff Andrea Rex's motion for summary judgment, for all of the reasons stated above.

<div style="margin-left: 45%;">

LSG SKY CHEFS, INC.
By its Attorneys,

_X. P. Mer_

Maynard M. Kirpalani BBO# 273940
Kevin P. Mannix, BB0# 640071
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

</div>

DATED: February 15, 2005

2/15/05
X. P. Men

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDREA REX, | CIVIL ACTION NO: 04-10568 WGY |
|       Plaintiff | |
| v. | |
| LSG SKY CHEFS, INC. | |
|       Defendant | |

## **AFFIDAVIT OF ATTORNEY KEVIN MANNIX**

I, Kevin P. Mannix, being first duly sworn, do depose and say as follows:

1. I am an associate in the firm of Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, counsel for the defendant, LSG Sky Chefs, Inc., in the above-entitled matter.

2. I am a member in good standing of the bar of the Commonwealth of Massachusetts.

3. Attached to this Affidavit as Exhibit A is a true and accurate copy of defendant's answers to interrogatories.

4. Attached to this Affidavit as Exhibit B is a true and accurate copy of the cover page and cold food production section of the Hazard Analysis Critical Control Point [hereinafter "HACCP"] Manual).

Signed under the pains and penalties of perjury, this 15th day of February, 2005.

_____
Kevin P. Mannix

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

ANDREA REX,

           Plaintiff

v.

LSG SKY CHEFS, INC.

           Defendant

CIVIL ACTION NO: 04-10568 WGY

## DEFENDANT'S ANSWERS TO PLANTIFF'S FIRST SET OF INTERROGATORIES

### INTERROGATORY NO. 1

Please describe in detail everything that the defendant did relating to the purchasing of ingredients, preparing, packaging and providing of sandwiches for American Airlines flight 1878 on November 9, 2002, (hereafter "the flight"), including but not limited to:

a)    the types of sandwiches and their content;

b)    how, where and when the ingredients used to make the sandwiches, including meat products, cheese, bread and vegetables, were obtained;

c)    the manner in which the sandwiches were put together including by whom, where and when;

d)    how the sandwiches were wrapped and bagged, including the materials used, by whom, where and when;

e)    how, when, where and by whom the sandwiches were packaged;

f)    how, when, where and by whom the sandwiches were delivered to American Airlines.

## ANSWER NO. 1

Objection. This request is overly broad and unduly burdensome. Subject to and without waiving this objection,

All items that are used in the sandwich production come from Michael Lewis. This includes the meat, bread, cheese, carroteenies, chips and cookies. The defendant receives five deliveries a week on these products. The only item the defendants receive frozen is the bread. All other items are fresh. The items are received from a refrigerated truck and placed in the produce cooler. The bread is taken out of the produce cooler at about 12 hours prior to sandwich assembly to the thaw area. All other items are pulled at around an hour before sandwich assembly and brought to the food production area. The food production area is a temperature-controlled environment which defendant keeps at 40 degrees.

The defendants have approximately six people a day make the sandwich from 20:00 to 4:30. The meat, cheese and bread are pre-sliced. The gloved employee takes the bread, opens it, places the slices of meat on, places the slice of cheese on and then puts the top on the bread. She then wraps the sandwich in paper and places a sticker on it to keep it closed. The wrapped sandwich is placed in a green tub. When the green tub is full it is moved to the bistro packing station for another employee to place it in a bistro bag along with the carroteenies, chips, mustard, silverware pack and cookie.

The Bistro bags are placed in blue bins and then moved to the holding cooler. The holding cooler is 35degrees. A driver comes to the holding cooler and places dry ice on top of the blue bins. He takes the blue bins on a strip cart to the truck. He drives 15 minutes to the field and delivers the blue bins to the Supp Room in the terminal. The supp room employee receives the blue bins and places them in a holding cooler located inside the Supp Room. The cooler is maintained at 37 degrees. About an hour before flight departure, the supp room employee takes the blue bins to the flight and places them in the bistro cooler that is located in the jet way. The passengers pick up their bag as they board.

In further answering, the defendant refers the plaintiff to documents produced in response to plaintiff's request for the production of documents.

## INTERROGATORY NO. 2

Please describe all policies and procedures intended to avoid the risk of a foreign object being present in a sandwich that were in effect on November 9, 2003.

## ANSWER NO. 2

Objection. This request is overly broad and unduly burdensome. Subject to and without waiving this objection, please see answer to Interrogatory No. 1 and the HACCP Manual produced by defendant in response to plaintiff's request for production of documents.

## INTERROGATORY NO. 3

Please state the basis of the defendant's responses to paragraphs 26, 27 and 28 of the plaintiff's Complaint.

## ANSWER NO. 3

Objection. This interrogatory seeks to shift the plaintiff's burden of proof to the defendant. Furthermore, this interrogatory seeks the conclusions of counsel.

## INTERROGATORY NO. 4

For each type of meat product used for sandwiches that you provided for the flight, please describe everything that was done to any and all such meat products by you, including in your description all occasions when the meat products were unwrapped, and how, when, where and by whom the meat products were handled.

## ANSWER NO. 4

Objection. This request is overly broad and unduly burdensome. Subject to and without waiving this objection, please see answer to Interrogatory No. 1 and the HACCP Manual produced by defendant in response to plaintiff's request for production of documents. In further answering, the meat comes fresh from Michael Lewis. The meat is received from a refrigerated truck and placed in the produce cooler. The meat is pulled at approximately an hour before sandwich assembly and brought to the food production area. The gloved employee places the slices of meat on the bread, places the slice of cheese on and then puts the top on the bread. She then wraps the sandwich in paper and places a sticker on it to keep it closed.

## INTERROGATORY NO. 5

Please identify and describe all allegations that a foreign object was found in airline food that you provided at any time from 1998 to the present, including in your description the identification of the parties and/or their attorneys making any such allegations, when the alleged incident occurred, the alleged nature of the foreign object and where it was found, the nature of any alleged injuries, and whether you took any actions relating to consumer safety in response to any such allegations.

## ANSWER NO. 5

Objection. This request is overly broad and unduly burdensome. Furthermore, it seeks information not designed to lead to the discovery of admissible evidence.

28991.1A                                    3

Signed under the pains and penalties of perjury this _____ day of December, 2004.

<div style="text-align: right;">

_____

Charles Miller
LSG Sky Chefs, Inc.

</div>

As to Objections:



_____

Maynard M. Kirpalani, BBO #273940
Kevin P. Mannix BBO #640071
WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

**2004 Edition**

# HACCP Manu





# Food Safety & HACCP Manual



| Flow Chart | Issued by: | LSG-Hygiene Institute |
| Product flow | FC | 3.04    © LHI 2004 |
| Cold Food Production | Page: | 1 of 2 |
| | Eff. from: | 01 JAN 04 |

**Purpose:** Description of the product flow **Cold Food Production** acc. to **CMCP 03** for identification of Critical Control Points (**• CCP**), Control Points (**• CP**) and Critical Manufacturing Control Points (**► CMCP**)

**Application:** This Flow Chart is to be applied by the production area **Cold Food Production**

**Flow Chart:**



# Food Safety & HACCP Manual

**LSG Sky Chefs**

| Flow Chart | | Issued by: | LSG-Hygiene Institute | |
|---|---|---|---|---|
| Product flow | | FC | 3.04 | © LHI 2004 |
| Cold Food Production | | Page: | 2 of 2 | |
| | | Eff. from: | 01 JAN 04 | |

**Definitions:**

**Cold food:**
Ready-to-eat meals (cold plates, salads, hors d'oeuvres, sandwiches, desserts) which are stored under cold storage conditions (+5 °C /+41 °F) and which are not heated prior to consumption.

**Fresh:**
Food status that requires controlled cold store temperature above ±0 °C (+32 °F)

**Dry goods:**
Packaged or containerized food that is not potentially hazardous, e.g. canned items, dried spices, dried herbs, vinegar, oil etc.

**Finished products incl. dry goods:**
E.g. deli salads, butter, single-service products

**Products:**
Food supplies

**Portioning:**
Menu preparation in accordance with specification including dish-out

**Washing:**
Includes a sanitation process, if in compliance with national food law

**Customer specification:**
Specification of the produced meal, including recipe and picture according to the requirements of the customer/airline

**Conformity:**     Correlation with Customer Specification

**CMCP:**     Process-related Critical Manufacturing Control Point

**Responsibilities:**     Cold Food Production Manager

.

| Revision status of this FC 3.04: | Issue no. | 0 | | |
|---|---|---|---|---|
| | This issue replaces issue no. | - | of | - |
| | Revised by: | LHI | on | 01 DEC 03 |
| | Approved by: | LHI | on | 01 DEC 03 |

These data are without signature on the distributed copies of this issue.

FC3.04e.xls